# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **REEL PIPE, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-6646** |
| **USA COMSERV, INC.** | **SECTION "L" (5)** |

## ORDER AND REASONS

Before the Court is a 12(b)(6) motion to dismiss filed by Reel Pipe, LLC and C-Logistics, LLC. R. Doc. 20. USA Comserv, Inc. opposes. R. Doc. 23. Having considered the parties' briefs and the applicable law, the Court now issues this Order and Reasons.

## I. BACKGROUND

This dispute arises out of a time charter between Reel Pipe, LLC ("Reel Pipe") and USA Comserv, Inc. ("USA Comserv"). In September 2017, USA Comserv chartered Reel Pipe's vessel, the M/V CAROL CHOUEST (the "Vessel") to transport 850,000 gallons of fuel to Puerto Rico. Under the terms of the Charter, USA Comserv was to pay (1) charter hire to Reel Pipe at a rate of $20,000 per day, (2) $1,200 per day for C-Logistics LLC, an affiliate of Reel Pipe, to coordinate the receiving, loading, and manifesting of all equipment, and (3) certain other defined expenses. If Reel Pipe paid for any of the expenses designated for USA Comserv's account, USA Comserv was obligated to reimburse Reel Pipe at its cost plus 10%.

The Vessel was delivered to USA Comserv on October 2, 2017 and redelivered to Reel Pipe on October 30, 2017, for a total charter period of 28.17 days. Reel Pipe invoiced USA Comserv for a total of $303,008.33 for daily charter hire and other costs and expenses under the Charter, but has not been paid. Accordingly, Reel Pipe sued USA Comserv for breach of the Charter and under Louisiana's Open Account statute.

1

In answer, USA Comserv asserts counterclaims against Reel Pipe and third-party claims against C-Logistics, LLC ("C-Logistics"). USA Comserv alleges that Reel Pipe breached the Charter by delivering a vessel that was unfit for its intended voyage and by failing to obtain necessary certifications and regulatory permitting. Specifically, USA Comesrv claims that Reel Pipe represented that the Vessel could transport the required 850,000 gallons of fuel by storing additional fuel in its liquid mud tanks – which required Coast Guard approval. According to USA Comserv, Reel Pipe and C-Logistics indicated that the Vessel's liquid mud tanks had already been inspected and would easily obtain approval, and that the Coast Guard permitting was merely a formality.

Reel Pipe and C-Logistics never secured Coast Guard approval to transport the fuel in the Vessel's liquid mud tanks, limiting the amount of fuel that could be transported to Puerto Rico. Additionally, USA Comserv was not allowed to offload any fuel upon arrival in Puerto Rico because the Vessel lacked the required certificates, and the fuel was sold offshore at a loss. USA Comserv later learned that (1) Reel Pipe did not apply for authorization to carry fuel in the Vessel's liquid mud tanks until *after* the Vessel returned from Puerto Rico, and (2) the Vessel's liquid mud tanks did not meet the Coast Guard's requirements and in fact never would have been approved to carry fuel.

USA Comserv further alleges that it entered into a separate agency agreement with C-Logistics, in which C-Logistics agreed to coordinate all logistics and related services under the Charter. USA Comserv claims that C-Logistics failed to perform these duties and, as a result, Reel Pipe has attempted to double bill USA Comserv – once through its affiliate C-Logistics for the $1,200 per day logistics fee, and again by seeking an additional 10% surcharge on services that should have been performed by C-Logistics. Additionally, USA Comserv avers that C-Logistics

2

owed it a duty to obtain all necessary permits and certificates for the Vessel's voyage to Puerto Rico and for unloading and discharging fuel in Puerto Rico. Finally, USA Comserv alleges that as its agent, C-Logistics owed it a duty to use commercially reasonable efforts to contract with suppliers of goods and services at competitive market rates, but instead engaged in self-dealing and contracted with affiliates of Reel Pipe and C-Logistics at rates that were higher than other non-affiliated suppliers.

Accordingly, USA Comserv brings claims against Reel Pipe and C-Logistics for breach of contract (Counts 1 and 5), recognition of its maritime lien on the Vessel (Count 2), negligent misrepresentation (Count 3), violation of the Louisiana Unfair Trade Practices Act (Count 6) and unjust enrichment (Count 7).[1] Reel Pipe and C-Logistics now move to dismiss Counts 2, 5, 6, and 7 under Federal Rule of Civil Procedure 12(b)(6).

## II.  LAW AND ANALYSIS

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The district court

---

[1] The counterclaim does not include a Count 4.

must construe facts in the light most favorable to the nonmoving party and must accept as true all factual allegations contained in the complaint. *Iqbal*, 556 U.S. at 678. A court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

Reel Pipe and C-Logistics move to dismiss Counts 2, 5, 6, and 7. The Court will address each in turn.

### a. Count 2 – Recognition of Maritime Lien

In Count 2, USA Comserv seeks "recognition of its maritime lien against the Vessel for all damages resulting from Reel Pipe's breach of the time charter." R. Doc. 10 at 13. USA Comserv argues that it has alleged the execution and breach of a time charter and is "entitled to have that lien legally recognized in this action." R. Doc. 23 at 8. Reel Pipe and C-Logistics contend that this claim must be dismissed because USA Comserv waived its right to a lien under Paragraph 33 of the Charter. This argument aside, the M/V CAROL CHOUEST is not presently before the Court. The parties are instructed to file supplemental briefing on the issue of whether a court can recognize a maritime lien on a vessel that is not before it.

### b. Count 5 – Breach of Contract against C-Logistics

To state a plausible breach of contract claim against C-Logistics, USA Comserv must allege that (1) a contract existed, (2) C-Logistics breached the contract, and (3) USA Comserv suffered damages as a result. *FEC Heliports, LLC v. Hornbeck Offshore Operators, LLC*, No. 15-4827, 2016 WL 5678557, at *5 (E.D. La. Oct. 3, 2016).

C-Logistics argues that there is no contract between it and USA Comserv, and the only alleged contractual duties are found in the Charter between USA Comserv and Reel Pipe. Under (2)(c) of the Charter, USA Comserv agreed *to Reel Pipe* "to pay $1,200 per day for a C-Logistics

4

coordinator to coordinate receiving of equipment, loading of equipment and manifest of all equipment for the charter." Accordingly, C-Logistics contends that USA Comserv cannot state a breach of contract claim.

USA Comserv alleges, however, that (1) it entered into a *separate* agency contract with C-Logistics, whereby C-Logistics agreed to act as its agent and provide all necessary logistical support to the Vessel for $1,200 per day, (2) C-Logistics breached its obligations under the agency agreement, and (3) USA Comserv has been double-billed by Reel Pipe for services that C-Logistics was supposed to perform. These allegations, taken as true, are sufficient to state a breach of contract claim against C-Logistics.

### c. Count 6 – Louisiana Unfair Trade Practices Act

The Louisiana Unfair Trade Practices Act ("LUTPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" and affords a private right of action to any person who suffers ascertainable loss as a result of such conduct. La. R.S. 51:1405(A). To succeed under LUTPA, a plaintiff must "prove some element of fraud, misrepresentation, deception or other unethical conduct." *Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 480 (5th Cir. 2002) (quoting *Omnitech Intern., Inc. v. Clorox Co.*, 11 F.3d 1316, 1332 (5th Cir. 1994)). What constitutes an unfair trade practice is determined on a case-by-case basis. *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633 (La. 4/23/10), 35 So. 3d 1054, 1059.

Louisiana courts have restrictively confined unfair practices to those which "offend[] established public policy" and are "immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Id.* LUTPA does not encompass sound business practices, the exercise of permissible business judgment, or free enterprise transactions, and there is "a great deal of daylight between a

breach of contract claim and the egregious behavior the statute proscribes." *Id.* (quoting *Turner v. Purina Mills, Inc.*, 989 F.2d 1419 (5th Cir. 1993)).

USA Comserv has stated a LUTPA claim against Reel Pipe and C-Logistics. It alleges that the parties continually misrepresented the Vessel's ability to transport the required amount of fuel, that Coast Guard approval to transport additional fuel in the Vessel's liquid mud tanks would be easily obtained, and that the tanks had already been inspected and the required permitting was a mere formality. Further, USA Comserv alleges that these were intentional misrepresentations, because (1) the Vessel would never have been approved to carry fuel as cargo, and (2) Reel Pipe did not even apply for authorization to carry the fuel in the Vessel's liquid mud tanks until after the Vessel completed its voyage. These allegations, taken as true at this stage in the proceedings, go beyond mere breach of contract or simple negligence and state a plausible claim under LUTPA. The Court will determine whether LUTPA's attorneys' fees provision is preempted by the general maritime law if this claim succeeds on the merits.

### d. Count 7 – Unjust Enrichment

To state a claim for unjust enrichment, USA Comserv must allege: (1) an enrichment, (2) an impoverishment, (3) a connection between enrichment and the impoverishment, (4) an absence of justification or cause for the enrichment and impoverishment, and (5) there must be no other remedy at law. *JP Mack Indus. LLC v. Mosaic Fertilizer, LLC*, 970 F. Supp. 2d 516, 521 (E.D. La. 2013). The remedy of unjust enrichment is "subsidiary in nature," applicable only to "fill a gap in the law where no express remedy is provided." *Walters v. MedSouth Record Mgmt.*, 38 So.3d 243, 244 (La. 2010). "The important question is whether another remedy is available, not whether the party seeking a remedy will be successful." *Ferrara Fire Apparatus, Inc. v. JLG Indus., Inc.*, 581 F. App'x 440, 443-44 (5th Cir. 2014).

USA Comserv cannot state a claim for unjust enrichment because other remedies are available at law. *See United States v. Cytogel Pharma, LLC*, No. 16-13987, 2018 WL 5297753, at *16 (E.D. La. Oct. 25, 2018). USA Comserv argues, however, that it should be permitted to plead an alternative claim of unjust enrichment because C-Logistics denies the existence of a contractual relationship. The absence of a contract, however, would not leave USA Comserv without a remedy at law – it has asserted other claims, sounding in tort, against C-Logistics and Reel Pipe. *See id.*; *Andretti Sports Mktg. Louisiana, LLC v. NOLA Motorsports Host Comm., Inc.*, No. 15-2167, 2015 WL 13540096, at *8 (E.D. La. Dec. 2, 2015)). Accordingly, USA Comserv's unjust enrichment claim (Count 7) must be dismissed.

## III. CONCLUSION

Accordingly, **IT IS ORDERED** that Reel Pipe and C-Logistics' motion to dismiss, R. Doc. 20, is **GRANTED** as to Count 7 and **DENIED** as to Counts 5 and 6.

**IT IS FURTHER ORDERED** that the parties may submit additional briefing with respect to Count 2 within ten (10) days of this Order.

New Orleans, Louisiana, this 8th day of January, 2019.

_____
**ELDON E. FALLON**
United States District Judge