# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **REEL PIPE, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-6646** |
| **USA COMSERV, INC.** | **SECTION "L" (5)** |

## ORDER AND REASONS

Before the Court is a 12(b)(6) motion to dismiss filed by Reel Pipe, LLC and C-Logistics, LLC. R. Doc. 20. USA Comserv, Inc. opposes. R. Doc. 23. By order of the Court, both sides submitted additional briefing. R. Docs. 32, 36. Having considered the parties' briefs and the applicable law, the Court now issues this Order and Reasons.

## I.  PRESENT MOTION

USA Comserv, Inc. ("USA Comserv") chartered Reel Pipe, LLC ("Reel Pipe")'s vessel, the M/V CAROL CHOUEST (the "Vessel") to transport 850,000 gallons of fuel to Puerto Rico. Under the terms of the Charter, USA Comserv agreed to pay $20,000 per day charter hire; $1,200 per day for C-Logistics LLC ("C-Logistics"), an affiliate of Reel Pipe, to coordinate the receiving, loading, and manifesting of all equipment; and certain other defined expenses. Reel Pipe invoiced USA Comserv after the 28-day charter period, but has not been paid. Accordingly, it sued USA Comserv for breach of the Charter and under Louisiana's Open Account statute.

In answer, USA Comserv asserts that the Vessel was unfit for its intended voyage. It brings counterclaims against Reel Pipe and third-party claims against C-Logistics for breach of the Charter; negligent misrepresentation; violations of the Louisiana Unfair Trade Practices Act; and "recognition of its maritime lien against the Vessel."

## II.  PRESENT MOTION

1

At issue here is Count 2 of USA Comserv's counterclaim, titled "recognition of maritime lien." R. Doc. 10 at 13. Specifically, "USA Comserv requests recognition of its maritime lien against the Vessel for all damages resulting from Reel Pipe's breach of the time charter." *Id.* Reel Pipe moved to dismiss this claim under Rule 12(b)(6), arguing that USA Comserv had waived its right to a lien under the terms of the Charter. The Court, however, ordered supplemental briefing on a potential issue that neither side had addressed: whether a non-vessel owner can seek recognition of a maritime lien when the Vessel is not before the Court.

Reel Pipe now argues that this Court cannot adjudicate the merits of USA Comserv's alleged maritime lien, since USA Comserv did not assert an *in rem* claim against the Vessel, did not name the Vessel as an *in rem* defendant, and did not arrest the Vessel. USA Comserv counters that it seeks only recognition – not enforcement – of its maritime lien, so there is no requirement that the Vessel be arrested. Alternatively, USA Comserv asserts that Reel Pipe waived its objection to *in rem* jurisdiction by failing to raise the issue in its 12(b)(6) motion.

### III. LAW AND ANALYSIS

A maritime lien "is an ancient and unique feature of admiralty doctrine," *Cardinal Shipping Corp. v. M/S Seisho Maru*, 744 F.2d 461, 466 (5th Cir. 1984), that "developed as a necessary incident of the operation of vessels." *Silver Star Enterprises, Inc. v. Saramacca MV*, 82 F.3d 666, 668 (5th Cir. 1996) (internal quotations omitted). As the Fifth Circuit has explained,

> A maritime lien is not, like a dry-land lien, a security interest arising from the personal obligation of the vessel's owner under a contract. A maritime lien is based instead on the fiction that the vessel may be a *defendant* in a breach of contract action when the vessel itself has begun to perform under the contract. While the legal fiction of the personality of the vessel may seem anachronistic, it is grounded in sound policy. The existence of a maritime lien affords special protection to the party who has been injured by a breach of contract and provides the basis for *in rem* admiralty jurisdiction. The injured party may arrest the vessel to ensure that should it prevail in the breach of contract action, it will be able to satisfy its judgment. The lien holder is therefore placed in a privileged position in relation to other creditors

who do not have the security of a lien and must proceed *in personam* against the owner of the vessel.

*E.A.S.T. Inc. of Stamford v. M/V Alaia*, 876 F.2d 1168, 1174 (5th Cir. 1898) (internal citations omitted).

A vessel is "an entity apart from its owner," and a maritime lien "represents a property interest entirely distinct from an *in personam* right." *Merchants Nat'l Bank of Mobile v. Dredge Gen. G.L. Gillespie*, 663 F.2d 1338, 1350, 1345. (5th Cir. 1981). It "adheres to the vessel wherever it may go" and "follow[s] the vessel even after it is sold to an innocent purchaser." *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 602 (5th Cir. 1986). "Thus, the maritime lien is a lien on the vessel, and only indirectly, inasmuch as it conflicts with the owner's rights in the vessel, it is connected with the owner." *Id.* (internal quotations omitted). "[T]he *in personam* action is filed against the owner personally, an *in rem* action, on the other hand, is filed against the *res*, the vessel." *Belcher Co. of Alabama v. M/V Maratha Mariner*, 724 F.2d 1161, 1163 (5th Cir. 1984).

A claim seeking recognition of a maritime lien is a separate and distinct cause of action from an *in personam* action against a vessel owner. *Port Ship Serv., Inc. v. Int'l Ship Mgmt. & Agencies Serv., Inc.*, 800 F.2d 1418, 1421 (5th Cir. 1986) ("A maritime lien is a remedy separate from an *in personam* action against the owner or operator."). Because USA Comserv did not assert an *in rem* claim against the Vessel, did not name the Vessel as a defendant, and did not arrest the Vessel, USA Comserv's claim for recognition of its maritime lien against the Vessel cannot proceed in its *in personam* counterclaim against the Vessel's owner. *See, e.g., Pillsbury Co. v. Midland Enterprises, Inc.*, 715 F. Supp. 738, 755 (E.D. La. 1989), *aff'd and remanded,* 904 F.2d 317 (5th Cir. 1990) ("Because the STOUT has not been seized in this action and neither a notice of claimant for the STOUT nor a letter of undertaking has been filed, this Court lacks *in rem* jurisdiction over the STOUT."); *Dow Chem. Co. v. Barge UM-23B*, 424 F.2d 307, 311 (5th Cir.

1970) ("However, no process in rem ever issued against the barge and it was not arrested. Attachment subjecting the res to the jurisdiction of the court is a prerequisite to a finding of in rem liability."); *Associated Metals & Minerals Corp. v. S. S. Portoria*, 484 F.2d 460, 461 (5th Cir. 1973) ("It is undisputed that no process in rem was issued, the [vessel] was not arrested, and the owner did not waive attachment of the vessel. Thus it is clear that the district court erred in entering an in rem judgment against the ship."); *Cal Dive Offshore Contractors, Inc. v. M/V SAMPSON*, 245 F. Supp. 3d 473, 478 (S.D.N.Y. 2017) ("[T]he *in rem* action that arises from that lien is against the [vessel] and does not state a claim against [the owner].").

The cases cited by USA Comserv are easily distinguishable. First, in *Marine Electrics Engineering, Inc. v. United States*, 2010 WL 3463689 (M.D. Fla. Sept. 2, 2010), the plaintiff sought to enforce a necessaries lien for work performed as a subcontractor on two United States Coast Guard vessels. This implicated both the Suits in Admiralty Act and the Public Vessels Act, and the Eleventh Circuit had specifically held that those two statutes allow "an *in personam* action in admiralty against the United States on principles of *in rem* liability." *Bonnani Ship Supply, Inc. v. United States*, 959 F.2d 1558, 1564 (11th Cir. 1992). The *Marine Electrics* court allowed the case to proceed without arrest because "it was the law of the Eleventh Circuit to allow a person who had provided necessaries to a public vessel to bring a maritime lien against the public vessel by suing the United States in personam on principles of in rem liability." 2010 WL 3463689, at *2 (citing *Bonnani*).

Next, *UPT Pool Ltd. v. Dynamic Oil Trading (Singapore) PTE Ltd.,* 2015 WL 4005527 (S.D.N.Y. July 1, 2015), *aff'd sub nom. Hapag-Lloyd Aktiengesellschaft v. U.S. Oil Trading LLC*, 814 F.3d 146 (2d Cir. 2016) presented "novel questions regarding the interplay among United States bankruptcy law, maritime law and the federal interpleader statutes." 2015 WL 4005527, at

4

*1. There, vessel owner Hapag-Lloyd had entered into a bunker supply contract with O.W. Bunker. O.W. Bunker filed for bankruptcy, and U.S. Oil Trading LLC ("USOT"), the physical bunker supplier, instituted *in rem* actions seeking to enforce its maritime liens against Hapag-Lloyd's vessels. Hapag-Lloyd brought an interpleader action, posted bond for the amount claimed, and moved for an anti-suit injunction against the *in rem* actions.

USOT and other objecting claimants argued that the district court could not rule on the validity of their maritime liens because "the Vessels were never arrested or present in this jurisdiction," and the court lacked *in rem* jurisdiction. 2015 WL 4005527, at *9. The district court rejected this argument, concluding that "*in rem* jurisdiction over the Vessels is irrelevant in actions to declare the validity and priority of competing maritime liens *brought by the vessel owner or charterer*." *Id.* (emphasis added). The Second Circuit affirmed, reasoning:

> *In rem* jurisdiction is a customary elliptical way of referring to jurisdiction over the interests of persons in a thing. To obtain jurisdiction over that interest, a court must either seize the *res* or obtain the consent of the owner or other person asserting a right of possession. This principle is demonstrated by the many cases in which *in rem* jurisdiction has been held waived without seizure when the owner appears without contesting jurisdiction. *By initiating an interpleader concerning certain in rem claims and posting adequate security for those claims, Hapag-Lloyd consented to the District Court's jurisdiction over its interests, which is sufficient to confer jurisdiction.*

*Hapag-Lloyd*, 814 F.3d at 153-54 (internal citations omitted) (emphasis added). USOT's argument failed, because it "relie[d] on cases in which the person possessing the *in rem* claim initiates the proceeding without the vessel owner's consent, which would necessitate the court obtaining jurisdiction over the *res*." *Id.*; *see also Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 183 (2d Cir. 2018) ("We held [in *Hapag-Lloyd*] that the *consent of a vessel's owner* to the adjudication of rights in a maritime lien was sufficient for the court to exercise in rem jurisdiction, regardless of whether the vessel itself was present."). This is consistent with 46 U.S.C. §

31343(c)(2), which allows a vessel owner to seek a declaration that its vessel is *not* subject to a recorded lien. *Kristensons-Petroleum, Inc. v. Sealock Tanker Co.*, 304 F. Supp. 2d 584, 590 (S.D.N.Y. 2004); *Leopard Marine*, 896 F.3d at 189 ("The dispute concerned here is one seeking a declaration that a maritime lien is not enforceable.").

*In personam* adjudication of rights in a maritime lien may be allowable through the interpleader statute, the Suits in Admiralty/Public Vessels Act, and in declaratory judgment actions brought by the vessel owner. This case involves none of those. Accordingly, USA Comserv cannot state a claim against Reel Pipe for "recognition of its maritime lien against the Vessel."[1]

## IV. CONCLUSION

For these reasons, Reel Pipe's motion to dismiss Count 2 of USA Comserv's counterclaim (R. Doc. 20) is **GRANTED**, without prejudice to USA Comeserv's rights to file its lien against the Vessel with the National Vessel Documentation Center or to bring a subsequent *in rem* claim against the Vessel in a later proceeding.

New Orleans, Louisiana, on this 22nd day of April, 2019.

_____
**ELDON E. FALLON**
United States District Judge

---

[1] USA Comserv further argues that Reel Pipe waived its objection by filing a motion to dismiss without objecting to or preserving its rights to contest *in rem* jurisdiction. But since USA Comserv did not initiate an *in rem* action or name the Vessel as a defendant, Reel Pipe has not appeared on its behalf. Because USA Comserv cannot state a claim for "recognition of its maritime lien against the Vessel" against Reel Pipe, dismissal is appropriate.